295 So.2d 251

**HUNTSVILLE INDUSTRIAL
ASSOCIATES, INC.**

v.

Charles CUMMINGS, Jr.

**HUNTSVILLE INDUSTRIAL
ASSOCIATES, INC.**

v.

Charles CUMMINGS, Jr., as Executor of the
Last Will and Testament of Charles
Cummings, Sr., Deceased.

**SC 447, SC 447–A.**

Supreme Court of Alabama.

April 25, 1974.

Rehearing Denied May 23, 1974.

Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellant.

Ford, Caldwell, Ford & Payne and William T. Galloway, Jr., Huntsville, for appellees.

394

FAULKNER, Justice.

These suits were filed in the Circuit Court of Madison County, pursuant to the provisions of Title 10, § 21(62), Code of Alabama 1940, Recompiled 1958. They were begun by summons and complaint, were consolidated for trial, and were tried before a jury. The jury returned a verdict assessing the fair value of Cummings' 200 shares of capital stock in Huntsville at $445.50 per share. The trial court entered judgment against Huntsville in the amount of $102,655.40 as the fair value of Cummings' 200 shares of stock as of December 22, 1969, as found and assessed by the jury, plus interest at 6% from December 22, 1969, to July 5, 1972, the date of the judgment. Huntsville filed a motion for new trial which was denied by the trial court. Huntsville appeals to this court. The controversy arose out of the following facts.

Huntsville Industrial Associates, Inc. was incorporated in Alabama on February 23, 1957, primarily as a real estate invest-

ment company. Its immediate purpose was investing in property formerly owned and operated by Lincoln Mills as a cotton mill. It used the property for a short period as a cotton warehouse. Subsequently the property was converted for use by tenants for light manufacturing and office space. Huntsville acquired other real estate for rental purposes. In early 1969, Huntsville's board of directors appointed a committee to study the feasibility of reorganizing the company as a real estate investment trust. Subsequently an Alabama Business Trust was organized by the management of Huntsville under the name and style of Huntsville Real Estate Investment Trust. On November 25, 1969, Huntsville's board of directors and the trustees of the Trust entered into an agreement for the reorganization of Huntsville whereby all of its assets would be conveyed to the Trust, which was to assume the liabilities of Huntsville; shares of beneficial interest in the Trust would be issued to Huntsville in consideration of the assets transferred to the Trust, and Huntsville liquidated and dissolved as a corporation; shares of beneficial interest in the Trust received by Huntsville in exchange for its property would be issued to stockholders of Huntsville according to their proportionate interest. On December 23, 1969, the agreement was ratified and approved by the majority of Huntsville's stockholders at a special meeting of stockholders called for that purpose. Cummings, who owned 200 shares in Huntsville, dissented from the action taken at the stockholders meeting. He made a demand in writing that Huntsville pay him the fair value of his stock. He and Huntsville were unable to agree on a fair value of his stock, whereupon he filed his suit by summons and complaint, demanding a trial by struck jury and claiming of Huntsville the sum of $150,000.00. A paragraph in Cummings' complaint which was amended alleged:

"Prior to or at the meeting of the stockholders at which the sale or exchange was authorized, the plaintiff filed written notice of his objection thereto and did not vote in favor thereof. Within ten (10) days after the date on which the vote was taken, plaintiff made written demand on defendant, Huntsville Industrial Associates, Inc., a corporation, to pay him the fair value of his shares as of the day prior to the date on which the vote was taken. Instead of offering to plaintiff the fair value of his stock, to-wit: One hundred fifty thousand & 00/100 ($150,000.00 Dollars or Seven hundred fifty & 00/100 ($750.00) Dollars per share, the defendant corporation offered plaintiff the purported book value of plaintiff's shares, or Forty thousand seven hundred twenty-eight & 00/100 ($40,728.00) Dollars at Two hundred three & 64/100 ($203.64) Dollars per share."

Huntsville filed a plea in abatement on the ground that the suit should be by petition rather than summons and complaint; a motion to strike the allegations of the offer noted above as being irrelevant, frivolous, and calculated to influence and prejudice the jury; a motion to strike the demand of trial by jury. A demurrer to the plea in abatement was sustained and the motions were denied by the trial court. The demurrers to the complaint as amended were overruled. Huntsville filed a plea of general denial, a plea admitting the board of directors and stockholders authorized and approved a sale or exchange of Huntsville's assets but said the sale or exchange of the assets and property were in connection with the dissolution and liquidation of Huntsville and "therefore, by the express terms of the provisions of Section 21(62) of Title 10, of the Code of Alabama 1940 (Recompiled 1958) the Plaintiff is not entitled to the relief sought in his complaint." A further plea said that the complaint "did not state the number and the class of the shares of the corporation which were owned at the time by plaintiff." Issue was joined and the trial began.

During the opening statement the attorney for Cummings, over the objection of Huntsville, was allowed to read to the jury the portion of the complaint referring to the offer made by Huntsville to Cummings to buy his stock at its book value.

The issues by which this appeal may be decided are classified as follows:

I.  Whether Cummings, a minority stockholder, is entitled to the benefit of Title 10, § 21(62), Code of Alabama 1940, Recompiled 1958, under the facts of this case.

II.  Whether it was error to deny motion to strike the matter relating to the offer alleged in the complaint, coupled with the fact that the trial judge allowed Cummings to read this allegation in the complaint to the jury in his opening statement.

## I.

Act No. 414, Acts of Alabama, Volume 2, 1959, known as the "Alabama Business Corporation Act" became effective on November 13, 1959. Section 62 has been codified at Title 10, § 21(62), Code of Alabama 1940, Recompiled 1958.[1]

■  We are called upon to construe the meaning of this section of the Act. In this

1. § 62. *Rights of dissenting stockholders upon sale or exchange of assets.*—In the event that a sale or exchange of all or substantially all of the property and assets of a corporation otherwise than in the usual and regular course of its business, or in connection with the dissolution and liquidation of the corporation, is authorized by a vote of the stockholders of the corporation, any stockholder who shall have filed with the corporation a written objection thereto, prior to or at the meeting of stockholders at which the sale or exchange is authorized, and who shall not have voted in favor thereof, may, within ten days after the date on which the vote was taken, make written demand on the corporation for the payment to him of the fair value of his shares as of the day prior to the date on which the vote was taken. If the sale or exchange is effected, the corporation shall pay to such stockholder, upon surrender of his certificate or certificates representing such shares, the fair value thereof. Such demand shall state the number and class of the shares owned by such dissenting stockholder. Any stockholder failing to make demand within the ten-day period shall be bound by the terms of the sale or exchange.

Within ten days after the sale or exchange is effected, the corporation shall give notice thereof to each dissenting stockholder who has made demand as herein provided for the payment of the fair value of his shares.

If within thirty days after the date on which the sale or exchange was effected the value of such shares is agreed upon between the dissenting stockholder and the corporation payment therefor shall be made within ninety days after the date on which the sale or exchange was effected, upon the surrender of his certificate or certificates representing such shares. Upon payment of the agreed value, the dissenting stockholder shall cease to have any interest in such shares or in the corporation.

If within such period of thirty days the stockholder and the corporation do not so agree, then the dissenting stockholder may, within sixty days after the expiration of the thirty-day period, file a petition in any circuit court or court exercising like jurisdiction asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the corporation for the amount of such fair value as of the day prior to the date on which such vote was taken approving such sale or exchange, together with interest thereon to the date of such judgment. The judgment shall be payable only upon and simultaneously with the surrender to the corporation of the certificate or certificates representing such shares. Upon payment of the judgment, the dissenting stockholder shall cease to have any interest in such shares or in the corporation. Unless the dissenting stockholder shall file such petition within the time herein limited, such stockholder and all persons claiming under him shall be bound by the terms of the sale or exchange.

The right of a dissenting stockholder to be paid the fair value of his shares as herein provided shall cease if and when the corporation shall abandon the sale or exchange or the stockholders shall revoke the authority to make such sale or exchange.

Shares acquired by the corporation pursuant to the payment of the agreed value thereof or to payment of the judgment entered therefor, as in this section provided, may be held and disposed of by the corporation as in the case of other treasury shares.

regard this is a case of first impression. In construing a legislative act the court must try to give effect to the true legislative intent. The court should give the act before it a liberal and reasonable construction.

■ The first sentence of this section provides, in the event that a sale or exchange of all or substantially all of the corporation property and assets *otherwise than in usual and regular course of its business,* or in connection with *the dissolution* and *liquidation* of the corporation, a dissenting stockholder may, within ten days after vote of the stockholders in favor of the sale or exchange, make written demand on the corporation for payment of the fair value of his shares. The words, "usual and regular course 'of business" must be construed within the context of their common usage. "Usual" is defined by Webster's Third New International Dictionary, Unabridged, as an occurrence in ordinary practice or in the ordinary course of events. "Usual" describes that which happens frequently or in the normal course of events. "Regular course of business" as stated by Mr. Justice Douglas in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business.

■ We are of the opinion that the legislature intended by this Act to give a dissenting stockholder the right to demand payment of the fair value for his shares of stock in the corporation where the sale or exchange includes the transfer of all or substantially all of the corporation's capital or fixed assets as opposed to the sale or exchange of all or substantially all of merchandise inventory or stock in trade. Here the primary purpose of Huntsville was the rental of real estate. Its land and buildings were capital assets held by the corporation for the production of income. Its "boiler plate" objects consisted of the corporation's having the power to buy and sell real and personal property, mortgage, pledge, lease, or "otherwise dispose of such properties, or any part thereof." There are other objects of the corporation which are found generally in every corporate charter. The fact remains, however, that the primary function of Huntsville was rental of real estate. Rental of its property was its "usual" and "regular course of business" and a reorganization was out of the scope of its usual and regular course of business.

There was no liquidation or dissolution of the corporation within the common meaning of those terms. Dissolution means terminating the corporate business by collecting and distributing the corporate assets—not stock in another corporation—to the stockholders. Liquidation means to wind down the corporate business, pay the debts, and distribute the remaining property and assets to the stockholders in cash or in kind.

We conclude that the reorganization of Huntsville was a sale or exchange of all or substantially all of the property and assets of the corporation otherwise than in the usual and regular course of business, and was not in connection with the dissolution and liquidation of the corporation. The dissenting stockholder was entitled to bring his suit.

II.

■ The complaint's allegation of an offer to purchase the stock at its book value, which was allowed by the court to be read to the jury over objection, was prejudicial to the defendant Huntsville's case. The offer to purchase could not be admitted as evidence. Tennessee Coal, Iron and Railroad Co. v. The State, 141 Ala. 103, 37 So. 433 (1904); Bates v. General Steel Tank Co., 36 Ala.App. 261, 55 So.2d 213, cert. denied 256 Ala. 466, 55 So.2d 218 (1951). And it was not offered in evidence. It was, nevertheless, a unique way to plant in the minds of the jury the fact that Huntsville had offered to pay Cum-

mings $40,728.00 for his stock. It gave the jury a base on which to begin their deliberation. This prejudice was compounded by a portion of the court's oral charge where it referred to the offer:

"The complaint is not evidence, it is not to be taken by you as evidence. It is simply the manner by which a plaintiff states a claim against a defendant or defendants. And the plaintiff here in the pertinent portion of the complaint, and in each complaint, says in essence that he gave written notice of an objection to the action that the stockholders took on December 23, 1969, and that he demanded his fair value of his shares of stock; that he was offered the book value of some $40,000.00 or $203.00 a share; and that he was unable to agree with the corporation as to the fair value of the shares of stock; and that consequently he brought suit for a determination of the fair value of his share of stock, which he alleges amounted to $150,000.-00."

The offer to purchase at book value was immaterial. As this case was tried, the issue of fact for the jury was to determine the fair value of the stock. The verdict of the jury should not be influenced by the interjection of immaterial matters, especially matters calculated to be prejudicial. (See Southern Electric Generating Company v. Leibacher, 269 Ala. 9, 110 So.2d 308 (1959), an eminent domain case where the court spoke of the narrow issue of determining fair market value of land being for the jury.) The reference to the offer in the complaint was prolix and should have been stricken. It was prejudicial to allow reference to it by counsel in his opening statement to the jury.

We pretermit discussion of the evidence establishing the fair value of the stock because of the likelihood of a new trial.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.