Edward C. PRITCHARD, Plaintiff-Appellant,†

v.

William MEAD, and Rainfair, Inc., Defendants-
Respondents.

Court of Appeals

*No. 89–1413. Submitted on briefs February 7, 1990.—Decided
March 28, 1990.*

(Also reported in 455 N.W.2d 263.)

†Petition to review denied.

431

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert E. Sutton* of *Sutton & Kelly* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lisa Stephens Neubauer, David M. Lucey,* and *Jon P. Christiansen* of *Foley & Lardner* of Milwaukee.

Before Brown, P.J., Scott and Nettesheim, JJ.

SCOTT J.   Edward Pritchard appeals from a summary judgment granted to William Mead and Rainfair, Inc. (collectively, "Rainfair"). Pritchard raises three issues on appeal: (1) whether sec. 180.72, Stats., represents an objecting stockholder's exclusive remedy; (2) whether substantial compliance with the statute is sufficient; and (3) whether the statute is constitutional. Finding none of Pritchard's arguments persuasive, we affirm.

Pritchard, a Rainfair employee for several years, owned forty shares of its stock. Until October 28, 1988, William Mead was Rainfair's president, CEO and majority shareholder, owning 680 of the total 980 shares of Rainfair stock. In August 1988, Craig L. Leipold sought to buy the company through the mechanism of a leveraged buy-out. Leipold presented a plan of merger between his company, CLL Acquisition Corporation (CLL), and Rainfair. The plan proposed to buy for $250 per share all the issued and outstanding stock, except for a 20% interest to be retained by Mead. The plan of merger also contained an agreement (the Mead agreement) under which Mead would be offered a five-year employment contract with a $75,000 salary increase per year, plus bonuses, and paid $350,000 over the next five years as consideration for a six-year noncompete arrangement. The value of Mead's package—the Mead agreement plus the sale of 80% of his stock—was $946,000.

Pritchard was timely notified of the special meeting of shareholders to be held on October 27, 1988, at which adoption of the plan of merger and the Mead agreement would be considered. On October 24, 1988, by means of a letter to Rainfair, Pritchard objected to the plan of merger. At the October 28 meeting, duly adjourned from the day before, the plan of merger was adopted with Pritchard casting the only dissenting vote. The Rainfair common stock of all minority shareholders except Pritchard was then purchased for $250 per share and contributed to CLL which then purchased for $250 per share the agreed-upon 80% of Mead's stock. CLL then merged into Rainfair, leaving Rainfair as the surviving corporation.

On November 3, 1988, Pritchard made written demand of the fair value of his forty shares of stock. On November 7, Leipold, Rainfair's new president, notified Pritchard by letter that Rainfair deemed the fair value of the stock to be $250 per share. Pritchard did not present his stock certificates for notation on them of his demand for payment of fair value, and on January 5, 1989, Leipold notified Pritchard that, pursuant to sec. 180.72(9), Stats., Rainfair had elected to terminate Pritchard's appraisal rights.

Pritchard filed a complaint alleging undervaluation of his stock in relation to Mead's, contending that Mead's stock was being valued at $1200 per share in contrast to the $250 per share for Pritchard's stock. Pritchard also demanded a declaration of the fair value of his shares and damages in that amount. Finally, the complaint averred that Pritchard was pursuing in federal court an action for a pension to which he claimed entitlement and asked that the court secure by injunction funds allegedly in a pension reserve.

Six months later, Rainfair moved for summary judgment, asserting that Pritchard had not pled or shown evidence of fraud or breach of fiduciary duty and that he had not complied with the statutory appraisal procedure. The trial court held that absent fraud or "wrongdoing," sec. 180.72, Stats., establishes an objecting stockholder's exclusive remedy and, since Pritchard had not fully complied with the statute, summary judgment was therefore proper. Pritchard appeals.

## EXCLUSIVITY OF REMEDY

Contending that the appraisal statute is "only one option" available to an aggrieved stockholder, Pritchard argues that summary judgment was improper because still at issue were the value of the stock and whether Rainfair or Mead breached the fiduciary duty owed to Pritchard. Rainfair responds that Pritchard neither pled fraud or breach of fiduciary duty nor followed the dictates of sec. 180.72, Stats., which it asserts prescribes a dissenting stockholder's exclusive remedy. Consequently, Rainfair contends, the request for judicial valuation of the stock was untimely and summary judgment was appropriate. We agree with Rainfair.

Whether Pritchard's exclusive remedy is to proceed under sec. 180.72, Stats., is a question of statutory interpretation and therefore a question of law which we review *de novo. Schachtner v. DILHR,* 144 Wis. 2d 1, 4, 422 N.W.2d 906, 907 (Ct. App. 1988).

Section 180.72(2), Stats., reads in relevant part:

Any shareholder failing to make demand within the applicable [time] period *shall be bound by the terms of the proposed corporate action.* Any shareholder making such demand shall thereafter be entitled *only to payment as in this section provided* and shall not

435

be entitled to vote or to any other rights of a shareholder. [Emphasis added.]

By the plain language of the statute, then, an objecting stockholder is required to seek appraisal. Once appraisal is initiated, the dissenter is disenfranchised of shareholder rights and, with or without appraisal, is precluded from bringing any other action merely to challenge the shares' fair value.

Our reading of sec. 180.72, Stats., is in accord with *Kademian v. Ladish Co.,* 792 F.2d 614 (7th Cir. 1986). Applying Wisconsin law, the Seventh Circuit held that, absent a showing of fraud or breach of fiduciary duty, sec. 180.72 represents the dissenting stockholder's exclusive remedy. *Kademian,* 792 F.2d at 628-30. Here, Pritchard did not plead fraud or other illegality. While he did argue breach of fiduciary duty at the summary judgment hearing, there are no specific facts in the complaint or in any of the counteraffidavits to support such a claim. The crux of Pritchard's complaint is dissatisfaction with the price offered him. Inadequacy of price in and of itself, however, does not constitute fraud or illegality. *Rosenstein v. CMC Real Estate Corp.,* 522 N.E.2d 221, 226 (Ill. App. Ct. 1988) (applying Wisconsin law).

If statutory remedies are provided, the procedure prescribed by statute must be strictly pursued to the exclusion of all others. *Siskoy v. Walsh,* 22 Wis. 2d 127, 131, 125 N.W.2d 574, 576 (1963). Accordingly, we hold that sec. 180.72, Stats., establishes an objecting stockholder's exclusive remedy in the absence of fraud or breach of fiduciary duty. Since Pritchard failed to plead corporate fraud or fiduciary breach, and since the matter of the shares' value is not properly before the court, we conclude that summary judgment was appropriate.

## SUBSTANTIAL COMPLIANCE

Pritchard next argues that even if sec. 180.72, Stats., does represent his sole avenue for seeking relief, he is still entitled to judicial determination of the value of his stocks because he substantially complied with the statute's requirements.[1]

Substantial compliance with a statute involves statutory construction, presenting a question of law on which we need not defer to the trial court's determination. *Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 196, 405 N.W.2d 732, 734 (Ct. App. 1987). The primary source of construction is the language of the statute itself. *Id.* If a statute is plain and unambiguous, we apply its plain meaning. *Trinwith v. LIRC,* 149 Wis. 2d 634, 642, 439 N.W.2d 581, 585 (Ct. App. 1989).

Section 180.72, Stats., grants certain rights to a shareholder who objects to a plan of merger. One right is the opportunity to obtain a judicial determination of the shares' fair value when no agreement with majority shareholders can be reached. Sec. 180.72(6). The right to judicial valuation is not automatic or absolute, however. Its exercise is limited to a dissenting shareholder who has "made demands as herein provided and whose rights to payment have not otherwise terminated." *Id.*

To perfect the right of judicial review, the statutory scheme under sec. 180.72, Stats., directs the dissenter to

---

[1]Pritchard complains that the trial court ignored both his substantial compliance and constitutional arguments. Although the decision bears no reference to those claims, and while it is the better practice for the trial court to address all issues presented to it, this court can resolve purely legal issues from the record. *See Wisconsin Dairy Fresh, Inc. v. Steel & Tube Prods. Co.,* 20 Wis. 2d 415, 421-22, 122 N.W.2d 361, 364-65 (1963).

first complete four steps. Briefly summarized, these steps are:

(1)    At least 48 hours before the voting on the plan of merger, the dissenting shareholder must file a written objection to the plan.

(2)    The dissenter must not vote in favor of the plan.

(3)    Within 10 days after the vote approving the plan, the dissenter must make written demand for the payment of the fair value of his shares.

(4)    Within 20 days after such demand, the dissenter must submit his stock certificate(s) for notation upon them that such demand has been made.

Sec. 180.72(1), (2) and (9). Additionally, the statute specifically provides that a shareholder's failure to comply with the notation requirement "shall, at the option of the corporation, terminate his rights under this section unless a court of competent jurisdiction, for good and sufficient cause shown, shall otherwise direct." Sec. 180.72(9).

Although the statute speaks of termination of rights for a shareholder's "failure to comply" with the notation requirement, Pritchard nonetheless asserts that substantial compliance is sufficient. The doctrine of substantial compliance requires "actual compliance in respect to the substance essential to every reasonable objective of the statute." *Midwest Mut. Ins.,* 138 Wis. 2d at 200, 405 N.W.2d at 736. Submitting stock certificates for notation formalizes the final offer by the corporation and the final objection by the dissenting shareholder and is a prerequisite to the court's involvement in the valuation process. *See* 18A Am. Jur. 2d *Corporations* sec. 825 (1985); *see also In re Wiedersum,* 41 Misc. 2d 936, 246

N.Y.S.2d 638 (N.Y. Sup. Ct. 1964). One objective of this requirement is fair and orderly business transactions. *See Anderson v. International Minerals & Chem. Corp.*, 67 N.E.2d 573, 576–77 (N.Y. 1946). That objective is reasonable.

The doctrine also provides that where a legislative provision is accompanied by a penalty for failure to observe it, the provision is held to be mandatory and substantial compliance will not suffice. *Midwest Mut. Ins.*, 138 Wis. 2d at 199, 405 N.W.2d at 735. Here, the dissenter who fails to observe the statutory scheme forfeits the right to judicial valuation of his stocks.

In this case, Pritchard complied with three of the four requirements. He timely filed a written objection to the plan and did not vote in favor of it. He also made written demand, within ten days, for payment of the fair value of his stock. As of the filing of this appeal, however, Pritchard had not submitted his stocks to the corporation for notation on them of his demand, nor does he offer any explanation for that omission. Being mindful of the importance of deadlines in business transactions, we agree that to allow noncompliance with the statute would "drastically tilt the sensitive equilibrium of interests . . . as to constitute complete rejection of the unequivocal legislative mandate." *Wiedersum,* 246 N.Y.S.2d at 640 (in construing a similar appraisal statute, shareholders' submission of certificates for notation six-and-a-half months after deadline held to constitute noncompliance with statute); *see also In re Glosser Bros.,* 555 A.2d 129, 144 (Pa. Super. Ct. 1989) (loss of appraisal rights for failure to submit shares for notation).

We see no ambiguity in the appraisal statute, nor any reason not to hold Pritchard to the full duty the

statute imposes. Therefore, in view of the statutory language and the weight of authority, we conclude that while the statute contemplates forgiveness from its requirements for "good cause," the doctrine of substantial compliance is inapplicable.

## CONSTITUTIONALITY

Finally, Pritchard contends that the trial court's application of sec. 180.72, Stats., was unconstitutional because it deprived him of access to the courts and impaired the obligation of contracts. We reject these arguments.

The appraisal statute prescribes a precise, and fairly simple, procedure for a shareholder who seeks to have the fair value of his or her stocks determined by a court. Wisconsin litigants are constitutionally entitled not to the exact remedy they desire, but merely to their day in court. *Metzger v. Wisconsin Dep't of Taxation,* 35 Wis. 2d 119, 129, 150 N.W.2d 431, 436 (1967). It was not the trial court's application of the statute, but Pritchard's own failure to comply with it, which has cost him his opportunity to obtain judicial review.

The second prong of Pritchard's argument is likewise unavailing. He asserts that the trial court's reading of the statute permits an impairment of the obligation of contracts. The result, he argues, is the unconstitutional taking by the legislature of one person's property and transferring it to another.

The thrust of Pritchard's argument is not entirely clear. He recites general impairment of contract language and refers us mainly to cases involving pensions. That part of his claim is not before us, however. If, on the other hand, he is suggesting that there is something necessarily improper about subsequent legislation

authorizing corporate action to which he did not specifically agree at the time he became a stockholder, he is mistaken. A person acquiring corporate stock consents in advance to subsequent lawful corporate action, and an exercise of rights by a majority of the stockholders is neither an impairment nor a breach of the contract. *See Milwaukee Sanitarium v. Lynch,* 238 Wis. 628, 636, 300 N.W. 760, 764 (1941).

We simply see no unconstitutionality here. The statutory scheme provides specific procedures by which an objecting stockholder may have the fair value of his or her stock determined. That scheme includes a limited right to judicial review. The legislature appropriately may impose reasonable limitations upon the remedies available to the parties. *Metzger,* 35 Wis. 2d at 129, 150 N.W.2d at 436. The limitations imposed by sec. 180.72, Stats., seek to enforce property rights not to abrogate them, and they are reasonable. If thought to be inconvenient or unsuitable, the legislature is the proper forum in which to seek their change. *See Metzger,* 35 Wis. 2d at 130, 150 N.W.2d at 437.

*By the Court.*—Judgment and order affirmed.