MIDWEST MUTUAL INSURANCE COMPANY
and Larry J. Wachter, Plaintiffs-Respondents,

v.

Debra L. NICOLAZZI, Defendant-Respondent,

WEST BEND MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 86–0762. Submitted on briefs February 25, 1987.—Decided
March 18, 1987.*

(Also reported in 405 N.W.2d 732.)

On behalf of the defendant-appellant the cause was submitted on the briefs of *James J. Pauly* of West Bend.

On behalf of the plaintiffs-respondents the cause was submitted on the brief of *Edward J. Bruner, Jr.,* of *Heft, Dye, Paulson & Nichols, S.C.* of Racine.

On behalf of the defendant-respondent the cause was submitted on the brief of *Eric S. Darling* of *Schmidt & Darling* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   This is a small claims, property damage subrogation case commenced by Midwest Mutual Insurance Company (Midwest) and its insured, Larry J. Wachter, against West Bend Mutual Insurance Company (West Bend) and Debra L. Nicolazzi.[1] West Bend denied coverage claiming nonpermissive use of the insured motor vehicle. The trial court struck the defense because West Bend had not com-

---

[1]This case was ordered by the chief judge to be decided by a three-judge panel pursuant to sec. 809.41, Stats.

plied with the procedures and requirements of sec. 344.15(4) and (5), Stats. (1983–84). Based upon this ruling, the parties stipulated to damages and to comparative negligence. Judgment was entered accordingly. West Bend appeals.

We conclude that the trial court correctly interpreted and applied the statute. Therefore, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On April 28, 1984, Wachter was operating his motorcycle, insured by Midwest, when he was involved in a collision with an automobile being operated by Nicolazzi, owned by Frances Edmark and insured by West Bend. Midwest paid $713.51 on behalf of Wachter under the collision coverage in the policy. In exchange, Midwest obtained a proof of loss statement and a subrogation receipt from Wachter. In addition, Wachter retained a $250 deductible interest.

Midwest and Wachter then sued West Bend and Nicolazzi.[2] Midwest's portion of the action was based on its subrogation claim. West Bend's answer admitted the issuance of a liability policy to Edmark insuring the vehicle but alleged that Nicolazzi was operating the vehicle without Edmark's consent and permission. Midwest and Nicolazzi then brought a motion to strike West Bend's coverage defense on the grounds that West Bend had not complied with sec. 344.15(4) and (5), Stats. (1983–84). The effect of this statute is to estop an insurer from asserting a coverage defense if, within thirty days after notice from the

---

[2]Wachter's claim for personal injuries resulting from the accident are pending in another action.

Department of Transportation, the insurer has failed to file an affidavit specifying nonpermissive use.[3] The trial court concluded that West Bend had not fully complied with the statute and struck the coverage defense.

West Bend first learned of this accident on May 8, 1984. Upon investigation, West Bend determined that Nicolazzi did not have permission to use the Edmark vehicle. West Bend forwarded an affidavit to Edmark to this effect and requested that she sign the document before a notary public. Edmark signed the affidavit, but failed to have her signature notarized.

[3]Section 344.15, Stats. (1983–84), in relevant part, provided:

(4) After receipt of the report of an accident of the type specified in s. 344.12, the secretary shall forward to the insurer named therein, that portion of the report which pertains to an automobile liability policy or bond. The secretary shall assume that an automobile liability policy or bond as described in this section was in effect and applied to both the owner and operator with respect to the accident unless the insurer notifies the secretary otherwise within 30 days from the mailing to the insurer of that portion of the report pertaining to the automobile liability policy or bond. ... As respects permission to operate the vehicle, the insurer may correct the report *only if it files with the secretary within the 30-day period* specified in this subsection an affidavit signed by the owner stating that the operator did not have the owner's permission to operate the vehicle. ...

(5) Nothing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurer in its automobile liability policy or bond *except that if no correction is made in the report within 30 days after it is mailed to the insurer, the insurer, except in case of fraud, whenever such fraud may occur, is estopped from using as a defense to its liability the insured's failure to give permission to the operator* ... . [Emphasis added.]

This statute has since been amended in certain respects which do not affect the issues in this case. *See* secs. 2201 and 2202, 1985 Wis. Act 29 (effective July 20, 1985).

Formal notice of this accident was given to West Bend by the Department of Transportation on July 13, 1984. West Bend forwarded Edmark's unnotarized affidavit to the department on or about July 23, 1984. It was rejected by the department and returned to West Bend on July 30, 1984, with the explanation that Edmark's signature was not notarized. The same day West Bend forwarded the affidavit on to Edmark with the request that she have her signature notarized and return it immediately. In the meantime, the thirty-day statutory deadline for West Bend to correct the report expired on August 13, 1984. It was not until October 8, 1984 that West Bend received the notarized affidavit from Edmark. It was immediately forwarded to the Department of Transportation, which rejected the document as untimely.

## SUBSTANTIAL COMPLIANCE

■ The issue before us is one of statutory construction which presents a question of law, and we need not give special deference to the determination of the trial court. *Mullen v. Coolong,* 132 Wis. 2d 440, 444–45, 393 N.W.2d 110, 112 (Ct. App. 1986). The primary source of construction is the language of the statute itself. *Grace Episcopal Church v. City of Madison,* 129 Wis. 2d 331, 336, 385 N.W.2d 200, 203 (Ct. App. 1986). The rules of construction are used only to determine the meaning of an ambiguous statute; a statute is ambiguous only if reasonable persons could disagree as to its meaning. *Id.* Whether reasonable persons could so disagree is a question of law. *Id.*

Here we conclude the statute is clear and unambiguous. The statute unequivocally requires that the

insurer must provide an affidavit of nonpermissive use within thirty days of receiving notification of the accident from the Department of Transportation.

West Bend does not appear to disagree with this interpretation of the statute. Rather, West Bend argues that it has substantially complied with the statute such that it should be permitted to defend the action on the coverage defense asserted.[4] Midwest answers this argument by asserting that the statute is mandatory, not merely directory, barring application of the substantial compliance doctrine.

In its reply brief, West Bend asserts that "whether a statute is mandatory or not is of no consequence in determining whether compliance with a statute is strict or substantial." We disagree. While we recognize that substantial compliance with a mandatory statute may be legally sufficient, the concept of substantial compliance is closely related to the question of whether a statute is mandatory or directory. *See* 2A N. Singer, *Sutherland Statutory Construction* § 57.26 (rev. 4th ed. 1984) (hereinafter *Sutherland).*

> The classification of statutes as mandatory or directory is important in helping to determine what effect should be given to statutory directions. The terms mandatory and directory are only descriptive of the effect that should be given to a statutory provision. There is no essential differ-

---

[4]The statute under consideration here was addressed by the supreme court in *Duveneck v. Western Casualty & Sur. Co.,* 56 Wis. 2d 479, 202 N.W.2d 1 (1972). The issue in *Duveneck,* however, was whether the policy was an operator's policy, thereby invoking the statute, or excess insurance. *Duveneck* did not address the issue of substantial compliance raised here. To the contrary, the facts of *Duveneck* show no compliance whatsoever with the requirements of the statute.

ence in statutes whereby their mandatory or directory character can be identified in order to determine their effect. No statutory provisions are intended by the legislature to be disregarded; but where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them. In doing so they must consider the importance of the literal observance of the provision in question to the object of the legislation. If the provision is essential it is mandatory. A departure from it is fatal to any proceeding to execute the statute or to obtain the benefit of it. As a matter of terminology, mandatory statutes are usually said to be imperative and directory statutes permissive.

... A presumption favoring mandatory interpretation is suggested by judicial expressions that a statute is mandatory unless its directory or discretionary character "clearly appears."

*Id.* § 57.01 (footnotes omitted).

In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations and whether a penalty is imposed for its violation. *State v. Rosen,* 72 Wis. 2d 200, 207, 240 N.W.2d 168, 171 (1976).

The rules of statutory construction assist in determining whether a statute is mandatory or directory. *Sutherland, supra* § 57.03. Where the language is clear and unambiguous, a mandatory construction is more likely. *Cf. Coolidge v. Rueth,* 209 Wis. 458, 464, 245 N.W. 186, 188 (1932). Here, we have already

determined that the statute is clear and unambiguous in terms of West Bend's duties.

█

Generally, where a legislative provision is accompanied by a penalty for a failure to observe it, the provision is held to be mandatory. *Marathon County v. Eau Claire County,* 3 Wis. 2d 662, 666, 89 N.W.2d 271, 273 (1958); *see also Sutherland, supra* § 57.08. Here, a penalty is clearly visited upon an insurer who fails to comply with the statute—estoppel against the coverage defense.

"One of the strongest indications of what construction should be given a statutory provision may be found in the use of negative, prohibitory, or exclusionary words." *Id.* § 57.09. That "estoppel" is such a word cannot be denied.

If a statute is remedial in nature, it is more apt to be construed as a directory statute. *Id.* § 57.12. Section 344.15(4) and (5), Stats. (1983–84), is not remedial in nature as to West Bend. Rather, it is punitive in that it deprives the insurer of the opportunity to defend on a coverage basis.

Whether the statutory directive is aimed at a public officer or private person can also assist in determining if the statute is directory or mandatory. *Sutherland, supra* § 57.15. With respect to public officers, the protection of public or private rights often depends upon the proper performance by the designated officer, a person whose dereliction in that respect is beyond the direct and particular control of those whose rights are at stake; such statutes are more likely to be construed as directory. *Id.* However, as to private persons, it frequently occurs that the individual's own rights depend upon his own compliance with statutory directions, so that there is no one to blame

but himself for the loss of those rights by a failure to comply; such a statute is more likely to be construed as mandatory. *Id.* Here, the statute deals with private entities (insurers) who, absent fraud, can control their own destinies to preserve the ability to defend on a coverage basis by simply complying with the statute on a timely basis.

This public versus private distinction also assists in determining whether a statute prescribing the doing of an act within a certain time is directory or mandatory. *Id.* § 57.19 at 682. Such a statute directed against a public official is more likely to be construed as directory in light of the substantial prejudice that might flow to private rights or the public interest. *Id.* at 682–83. Again, however, as to private persons, the statute is more likely to be construed as mandatory. *Id.* at 684. "Where an individual is the person not strictly complying, he has no grounds for complaint." *Id.*

In light of the above considerations, we have little difficulty in concluding that sec. 344.15(4) and (5), Stats. (1983–84), is mandatory.

As to substantial compliance, we note that this doctrine contemplates "actual compliance in respect to the substance essential to every reasonable objective of the statute." *Sutherland, supra* § 57.26 (quoting *Stasher v. Harger-Haldeman,* 372 P.2d 649, 652 (Cal. 1962)). Stated otherwise, directory statutes are those having requirements which are not of the substance of things provided for. *Rosen,* 72 Wis. 2d at 207, 240 N.W.2d at 171. The legislature has mandated that corrections to the secretary's report occur within thirty days—not fifty-six days as occurred here. We assume the decision of the legislature to fix a thirty-day deadline was a matter of some substance and

importance to it. Our function here is not to rewrite the statute or to bend it to our will if we feel its application is too harsh. As the supreme court observed in *Marathon County:*

> It is the factor of the consequences, which would follow from adopting the interpretation that this particular statutory clause is mandatory, that is rather disturbing to this court. ...
>
> While we dislike the result, nevertheless, we are compelled to the determination that the objective sought to be achieved would be defeated if we did not hold the clause in question to be mandatory in character. The wording employed also is that ordinarily used in stating a mandatory requirement. The consequences which follow from such interpretation, while harsh, are not so absurd as to tip the scales in favor of a construction that the statutory words in question are but directory in nature.

*Marathon County,* 3 Wis. 2d at 668, 89 N.W.2d at 274.

West Bend's attempt to clothe itself in the substantial compliance language of *Nigbor v. DILHR,* 120 Wis. 2d 375, 379–82, 355 N.W.2d 532, 535–36 (1984), misses the thrust of the case. The defect in *Nigbor* was the failure of the petitioner seeking judicial review of an administrative agency decision to name the agency as a party in the caption of the circuit court pleadings. The body of the complaint set forth the action taken by the agency and the original summons showed receipt by the agency of the pleadings. The supreme court, noting that the worker's compensation law was to be liberally construed, that no prejudice had occurred and that the irregularity was merely technical, held that the circuit court had jurisdiction to conduct the review proceeding. Of critical importance

to the court was the fact that the agency had notice *within the thirty-day period* provided under the act. Here, even if we gratuitously assume that all interested parties had notice of West Bend's potential coverage defense at the time of its noncompliance with the statute, such notice was not given within the time period mandated by the statute. This sets the instant case apart from *Nigbor* on very significant grounds.

Therefore, we conclude that the statute is mandatory and that the doctrine of substantial compliance under these facts is not applicable.

## CONSTITUTIONAL ISSUES

West Bend next contends that a strict reading of the statute which excludes the application of the doctrine of substantial compliance represents an unconstitutional impairment of contract and the unlawful taking of property without due process.

West Bend, however, has failed to notify the attorney general of this constitutional challenge to the statute. When such a challenge to a statute is made in a declaratory judgment action, the attorney general must be "served with a copy of the proceeding and be entitled to be heard." Sec. 806.04(11), Stats. This requirement applies in nondeclaratory actions as well. *See Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 116–17, 280 N.W.2d 757, 764–65 (1979). However, this defect on the trial level is not fatal to an appellate consideration of the constitutional issue if notice at the appellate stage is given. *In re Estate of Fessler,* 100 Wis. 2d 437, 444, 302 N.W.2d 414, 418 (1981). However, West Bend has also failed to give notice to the attorney general at this level of the proceedings.

While we deem it within our powers to allow notice to the attorney general to be given even at this late date, we choose not to do so under the history of this case. The constitutional issue was only minimally briefed below and here.[5] Other than citing the relevant provisions of the state and federal constitutions, West Bend offers no authority for its position. We therefore decline to address this added issue.

*By the Court.*—Judgment affirmed.

---

[5]This may explain, in part, why the trial court decision and the appellate briefs of Midwest and Nicolazzi fail to address this issue.