COURT OF APPEALS
DECISION
DATED AND FILED

February 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP85**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV337

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN EX REL. UNITED STATES CELLULAR OPERATING COMPANY LLC,

    PETITIONER-APPELLANT,

  V.

TOWN OF FOND DU LAC,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Fond du Lac County: ANTHONY C. NEHLS, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

¶1 GROGAN, J. WISCONSIN STAT. § 66.0404 (2021-22),[1] Wisconsin's mobile tower siting law, governs a political subdivision's authority to regulate mobile tower siting and construction. Pursuant to this statute, political subdivisions are authorized to enact zoning ordinances to regulate certain activities including "[t]he siting and construction of … new mobile service support structure[s] and facilities[,]" and where a political subdivision has chosen to do so, a party must seek approval prior to constructing such a structure. Sec. 66.0404(2)(a)1, (2)(b).

¶2 United States Cellular Operating Company LLC (US Cellular) wished to construct a new mobile tower in Fond du Lac County so that it would no longer need to lease space on another company's tower, and it sought a conditional use permit (CUP) from the Town of Fond du Lac (the Town) to do so. After the Town Board denied US Cellular's application following a verbal vote, US Cellular sought declaratory judgment that its application was nevertheless deemed granted by operation of law because the Town failed to provide it with a *written* notification of the denial that detailed the reasons for the denial within WIS. STAT. § 66.0404(2)(d)'s ninety-day deadline for doing so. The circuit court denied US Cellular's request based on its conclusion that § 66.0404(2)(d) requires only substantial compliance and that the Town had, in fact, substantially complied. Because we conclude that § 66.0404(2)(d) requires actual compliance and that the Town failed to actually comply with its requirements within the ninety-day deadline, the court erred in denying US Cellular's request for judgment on the

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

pleadings and in dismissing US Cellular's claim for declaratory judgment.[2] Accordingly, US Cellular is entitled to approval of its CUP application by operation of law based on § 66.0404(2)(d)'s plain language. We reverse the order and remand with directions to the circuit court to enter an order granting US Cellular's declaratory judgment.

## I. BACKGROUND

¶3      US Cellular leased space on SBA Communications Corporation's (SBA) "monopole service support structure" in Fond du Lac County for many years for the purpose of providing cellular services to customers in the Fond du Lac area. In late 2021, as its long-term lease with SBA neared its December 31, 2023 end, US Cellular began evaluating the economic feasibility of renewing its lease with SBA versus constructing its own monopole service support structure in the Fond du Lac area, and it ultimately determined it would be more economically feasible to construct its own tower nearby. According to US Cellular, constructing its own tower would save it approximately $2.4 million over the course of a typical thirty-year lease.

¶4      As part of its evaluation, US Cellular identified what it believed to be an appropriate location approximately one quarter of a mile from the SBA

---

[2] US Cellular also sought certiorari review before the circuit court on the grounds that the Town's decision violated WIS. STAT. § 66.0404(2)(h). The court dismissed US Cellular's certiorari claim, and US Cellular asks that we address the merits of its certiorari claim on appeal regardless of our ruling on US Cellular's declaratory judgment claim. Because our conclusion that US Cellular was entitled to declaratory judgment is dispositive, we decline to do so. *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source omitted)); *see also Martinez v. Rullman*, 2023 WI App 30, ¶5, 408 Wis. 2d 503, 992 N.W.2d 853 (we decide cases on the narrowest possible grounds).

structure on which it had been leasing space.[3]  US Cellular entered into a lease with the property owner of the identified location and thereafter filed an application for a CUP with the Town of Fond du Lac pursuant to WIS. STAT. § 66.0404(2)(b) and the Town's local mobile tower siting ordinances.[4] US Cellular's application included an affidavit asserting that it would be "economically burdensome" for it to continue collocating on SBA's tower in light of the purported $2.4 million savings if allowed to construct its own tower.  *See* § 66.0404(2)(b)6.

¶5    The Town notified US Cellular that its application was considered complete as of April 20, 2023, which triggered WIS. STAT. § 66.0404(2)(d)'s ninety-day deadline.  Based on the application completion date, that deadline was July 19, 2023.

¶6    The Town thereafter held three meetings to consider and discuss US Cellular's application—two meetings of the Town Planning Commission on May 11, 2023, and June 1, 2023, and a final meeting of the Town Board on June 28, 2023.  At the May 11th and June 1st meetings, the Planning Commission heard public comments, which included comments from US Cellular's and SBA's representatives, reviewed US Cellular's application, and reviewed the relevant statutes and local zoning ordinance codes.  The Town's attorney also explained

---

[3] US Cellular searched for locations within a specific "search ring," which is defined as "a shape drawn on a map to indicate the general area within which a mobile service support structure should be located to meet radio frequency engineering requirements, taking into account other factors including topography and the demographics of the service area."  WIS. STAT. § 66.0404(1)(r).

[4] *See* TOWN OF FOND DU LAC, WIS., ORDINANCES § 13-3-3, https://townoffdl.com/wp-content/uploads/2024/02/Zoning-Ordinance-Revised.pdf.  The Town's ordinances generally incorporate WIS. STAT. § 66.0404's requirements.

WIS. STAT. § 66.0404's requirements to the Planning Commission, emphasized the ninety-day deadline, explained the statutory limitations for denying US Cellular's application, and described the relevant ordinance for "special exceptions" applicable to US Cellular's request. *See* TOWN OF FOND DU LAC, WIS., ORDINANCES § 13-1-9(f)(2), https://townoffdl.com/wp-content/uploads/2024/02/Zoning-Ordinance-Revised.pdf. Section 13-1-9(f)(2) provides that:

> Special exceptions may be authorized by the Board when it appears:
>
> a. That it is reasonably necessary for the public convenience at that location.
>
> b. That it is so designed, located, and proposed as to be operated so that it will not be injurious to the district in which it shall be located or otherwise detrimental to the public welfare.
>
> c. That it conforms to the applicable regulations and standards of and preserves the essential character of the district in which it shall be located.

¶7 During the June 1st meeting, the Planning Commission discussed the three requirements for granting a special exception, focusing primarily on whether US Cellular's proposed mobile tower was "reasonably necessary for the public convenience at that location." *See id.* In that regard, various Planning Commission members voiced concerns such as:

- There being only a minimal benefit to the public because US Cellular's coverage would not necessarily be "greater" but rather only "different."

- That a new tower would not "offer up a benefit to the -- to the town -- or the town's citizens by having another tower[.]"

- That US Cellular had not presented any information establishing that construction of a new tower was "really … necessary[.]"

5

- There was no "public benefit" to granting US Cellular's application.

- US Cellular's tower being only approximately one quarter of a mile from SBA's tower would not offer any significant benefit in coverage.

In summarizing the discussion and commentary, the Town's attorney indicated that while there did not appear to be any concern that US Cellular had satisfied § 13-1-9(f)(2)b or § 13-1-9(f)(2)c, US Cellular had nevertheless failed to establish that the new tower was "reasonably necessary for the public convenience at that location" as required by § 13-1-9(f)(2)a. Specifically, the Town's attorney stated:

> I think what I'm hearing is A is not met, and that's the criteria that says that the project is reasonably necessary for the public convenience at that location. And again, I think I say that because you're -- your views that you've expressed is the combination of doubling the number of towers with not improving actual service to the public is not reasonably necessary for the public convenience. So, I think that what you are saying is that A is a no.

Various Planning Commission members confirmed this was accurate, and the Planning Commission ultimately voted to recommend that the Town Board deny US Cellular's application on the basis that the tower was not reasonably necessary at the location US Cellular identified. The approved June 1st meeting minutes, which reflect the Planning Commission's recommendation and position that § 13-1-9(f)(2)a "was not met because doubling the number of towers in the area without improving coverage to the public isn't reasonably necessary[,]" were posted to the Town's website on June 29, 2023.

¶8 The Town Board thereafter considered US Cellular's application and the Planning Commission's recommendation at its June 28, 2023 meeting. As he had at the Planning Commission meetings, the Town's attorney advised the Board

of WIS. STAT. § 66.0404(2)(d)'s requirements, including the ninety-day deadline, referenced the relevant zoning ordinances, and explained the criteria the Board could not consider in deciding whether to approve or deny US Cellular's application. During the hearing, the Board heard public comments, including statements from US Cellular's and SBA's representatives, many of which were generally similar to the information provided at the two Town Planning Commission meetings. After explaining to the Board that it could not "disapprove an application based on [its] assessment of the suitability of other locations[,]" the Town's attorney indicated that he did not believe that the Planning Commission had done so and that what the Planning Commission had instead concluded was that "we don't care where you [US Cellular] go, you just can't be here" and that US Cellular could apply for a CUP for a different location.

¶9 Ultimately, on a three-to-two vote, the Town Board accepted the Planning Commission's recommendation and denied US Cellular's application based on its conclusion that US Cellular failed to establish its proposed tower was "reasonably necessary for the public convenience" at its desired location. *See* § 13-1-9(f)(2)a. In doing so, the Board adopted the Planning Commission's findings, and the minutes from the Town Board's June 28th meeting reflect that it "adopted the Planning Commission's finding that the application does not meet the requirement for being reasonably necessary for the public convenience at this location." It is not clear when, if ever, either the unapproved draft or approved minutes from the Board's June 28th hearing were posted on the Town's website. However, it is clear from the Record that the minutes from that meeting were not submitted for approval until well after the July 19th deadline.

¶10 On July 5, 2023, US Cellular's attorney notified the Town's attorney via email that she had "been authorized to file a certiorari action for judicial

7

review of the Town Board's denial" of US Cellular's CUP application, requested that the Town's attorney "provide … a copy of the Board's written decision," and asked to be made aware "when the [Town Board meeting] minutes are filed with the clerk" "[i]f the only record of the Board's decision is as reflected in the minutes[.]"  The Town's attorney acknowledged receipt of US Cellular's request two days later and indicated that he would "check … about the status of the meeting minutes and get back to [her] soon."

¶11    On July 27, 2023, eight days after the July 19th deadline for the Town to notify US Cellular of its decision in writing pursuant to WIS. STAT. § 66.0404(2)(d), US Cellular's attorney notified the Town's attorney via email that as of that date, US Cellular had not "received any written decision" regarding its application and that "the minutes of the June 28th … Town Board" meeting had not yet "been posted on the Town's website."  The email further informed the Town's attorney that pursuant to § 66.0404(2)(d), it was US Cellular's position that the Town's failure to provide it with a written decision "result[ed] in default approval of the application" and requested that the Town's attorney reach out "to discuss the procedure by which a CUP will be issued and proposed conditions."

¶12    The Town's attorney responded via email on July 31, 2023, and stated he would "send … the minutes and audio asap" and that he "believe[d] that between those things, U.S. Cellular's in person attendance at all of the relevant meetings, and [the attorneys'] discussions about the specific grounds for the Town's denial, the Town still substantially complied with the notice

requirements."[5]  Counsel concluded the email by stating that he would "get [US Cellular] written materials as well."  On August 8, 2023, the Town's attorney again contacted US Cellular's attorney by email, and that email attached the minutes from the Town Board's June 28th meeting.  Counsel further noted that the minutes would "be formally approved by the Board at its meeting on Monday" and that the Board would be "discuss[ing] this matter[.]"[6]

¶13  US Cellular ultimately filed a Summons and Complaint in August 2023, asserting claims for declaratory judgment, *see* WIS. STAT. § 806.04, and for certiorari review.  As to its declaratory judgment action, US Cellular alleged it was "entitled to judgment declaring that its application for a CUP … is approved because" the Town had failed to comply with WIS. STAT. § 66.0404(2)(d)'s ninety-day deadline for providing it with written notification of the Town's decision and asked that judgment be entered declaring that its CUP application was "approved by operation of law[.]"  As to its certiorari claim, US Cellular alleged that "[t]he Town Board exceeded its jurisdiction by attempting to regulate the permitting of a mobile service support structure in

---

[5] Attorneys for US Cellular and the Town had previously exchanged emails in June 2023 regarding US Cellular's belief that the Town's "reasonably necessary for the public convenience at that location" requirement violated WIS. STAT. § 66.0404(2)(h).  Those emails also referenced US Cellular's "understand[ing] that the ground for recommending denial of the CUP was a finding" based upon § 13-1-9(f)(2)a of the Town Zoning Ordinance.

[6] The emails between US Cellular's attorney and the Town's attorney reveal that the Town's attorney was in the midst of addressing a serious health issue during the ninety-day time period during which WIS. STAT. § 66.0404(2)(d) required the Town to provide US Cellular with written notification of its final decision.  The Town highlights its attorney's health issues in its brief and seems to imply that its attorney's health issues may have contributed to its failure to provide US Cellular with the requisite written notification.  We note that the Town's attorney during the relevant 2023 time period is not the attorney of record at this time.  While we are sympathetic to counsel's health and personal circumstances, those circumstances do not relieve the Town of its obligations under § 66.0404(2)(d).

excess of the authority granted to a political subdivision in WIS. STAT. § 66.0404" and that the Board had also "proceeded under incorrect theories of law in denying [US Cellular's] application for a CUP." The Town denied the allegations.

¶14 US Cellular subsequently sought judgment on the pleadings pursuant to WIS. STAT. § 802.06(3). According to US Cellular, judgment on the pleadings was appropriate because the Town, despite denying that it had failed to comply with WIS. STAT. § 66.0404(2)(d), had nevertheless failed to provide any evidence that it actually *had* complied.[7]

¶15 In response to US Cellular's declaratory judgment argument, the Town countered by first asserting that US Cellular failed to comply with WIS. STAT. § 893.80(1d), the notice of claim statute, and that even if it had complied with § 893.80(1d), the Town either *had* complied with WIS. STAT. § 66.0404(2)(d) or, if it had not actually complied, that it had nevertheless *substantially* complied. The Town also asserted that even if it did not comply with § 66.0404(2)(d), US Cellular was not entitled to a CUP "as a matter of law" based on "separation of powers principles" and that the proper remedy would, instead, be a "remand[] back to the Town Board for the purpose of issuing a conditional use permit that contains restrictions and conditions." As to its assertion that it had complied with § 66.0404(2)(d), either in actuality or substantially, the Town argued that US Cellular had received the statutorily required notice "in various ways[,]" including "on the Town's website, the written correspondence between the Town

---

[7] US Cellular filed a separate brief in the circuit court regarding its certiorari claim and argued that the circuit court should reverse the Town's decision because the Town had violated WIS. STAT. § 66.0404. However, because we need not address US Cellular's certiorari arguments, *see supra* note 2, we do not include a recitation of the certiorari arguments the parties raised before the circuit court.

Attorney and Plaintiff's Attorney, and by way of Plaintiff's appearance at all relevant meetings wherein they learned the results of the Town's review and decision on the application."

¶16    The circuit court held a hearing in December 2023 and issued an oral ruling, based on the pleadings and the parties' submissions, denying US Cellular's motion for judgment on the pleadings and dismissing US Cellular's declaratory judgment action.[8]    In reaching this conclusion, the circuit court determined, inter alia, that:

- The Town appeared to have "acknowledge[d] that it did not provide a written decision per se, but contends that [it] substantially complied with the statute because [US Cellular] was present for all of the hearings."

- US Cellular's attorney and the Town's attorney had exchanged emails "detailing the denial from the zoning commission or the planning commission" and the Commission's reasons for recommending the denial.

- US Cellular was "clearly … noticed that [the Town] denied [its] application for the conditional use permit and the rationale behind the denial at the June 28th board meeting because [it] sent a timely appeal on that decision, which included the subject line, Appeal of Town of Fond du Lac's Denial of U.S. Cellular Conditional Use Permit."

The circuit court then applied what it believed to be WIS. STAT. § 66.0404's purpose—ensuring "that applicants are timely noticed of the acceptance or denial of their applications for conditional use permits"—to those facts and denied US Cellular's request because it believed that if it granted US Cellular's request, it "would be taking away the right of the parties to have their bona fide issues or

---

[8] The circuit court also dismissed the certiorari action.

substantive issues resolved by the Court." The circuit court also explained that it was denying declaratory judgment because US Cellular was "aware" of the Town Board's decision and that US Cellular had "substantial evidence provided to [it], at least from the [Town's] point of view supporting that decision."[9]

¶17 As to the Town's argument that US Cellular's claims must be dismissed because US Cellular failed to satisfy the notice of claim statute, the circuit court "f[ound] that argument unpersuasive" and noted that "[t]he statute and the ordinance clearly set up the available avenues of recourse for" an aggrieved party and that it "spells out the certiorari avenue … and … declaratory judgment would be available." The circuit court also rejected the Town's argument that the doctrine of separation of powers prevented it from granting US Cellular's declaratory judgment action, stating that "checks and balances" afforded it "oversight to review town board's and other political subdivision's decisions and give the aggrieved party recourse against such decisions" and that it clearly "has the authority to remand the case back to the Town to impose -- to approve the conditional use permit and to impose certain conditions to that."

¶18 The circuit court subsequently filed a written order confirming its oral ruling, and US Cellular now appeals.

---

[9] It is unclear why the circuit court focused on—and seemingly at least partially based its decision on—the Town's apparent belief that it had provided substantial evidence. The question is not whether a political subdivision *thinks* it identified substantial evidence—the question is whether a political subdivision *actually* did so as required by WIS. STAT. § 66.0404(2)(d)4.

12

## II. STANDARD OF REVIEW

¶19 "A judgment on the pleadings is essentially a summary judgment decision without affidavits and other supporting documents." *Southport Commons, LLC v. DOT*, 2021 WI 52, ¶18, 397 Wis. 2d 362, 960 N.W.2d 17. In reviewing a request for judgment on the pleadings, "'[w]e first examine the complaint to determine whether a claim has been stated[,]'" and "'[i]f so, we then look to the responsive pleading to ascertain whether a material factual issue exists.'" *DeBraska v. Quad Graphics, Inc.*, 2009 WI App 23, ¶12, 316 Wis. 2d 386, 763 N.W.2d 219 (citation omitted). "Judgment on the pleadings is proper only if there are no genuine issues of material fact." *Southport Commons, LLC*, 397 Wis. 2d 362, ¶18; WIS. STAT. § 802.06(3). Whether a party is entitled to judgment on the pleadings is a question of law we review de novo. *Southport Commons, LLC*, 397 Wis. 2d 362, ¶18.

¶20 "'A decision to grant or deny declaratory relief falls within the discretion of the circuit court[,]'" and we will not disturb the circuit court's ruling unless it "'erroneously exercised its discretion.'" *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶40, 255 Wis. 2d 447, 649 N.W.2d 626 (quoting *Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶36, 244 Wis. 2d 333, 627 N.W.2d 866); *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶35, 309 Wis. 2d 365, 749 N.W.2d 211. We will uphold a circuit court's discretionary act so long as it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Milwaukee Dist. Council 48*, 244 Wis. 2d 333, ¶36 (quoted source omitted); *Olson*, 309 Wis. 2d 365, ¶35.

## III. DISCUSSION

¶21 Our review of the circuit court's order denying US Cellular's motion for judgment on the pleadings and dismissing its claim for declaratory judgment requires that we construe WIS. STAT. § 66.0404(2)(d) and whether the Town complied with that statute's requirements.[10] Pursuant to what is by now a well-known framework, we review questions of statutory interpretation de novo, *State v. Lickes*, 2020 WI App 59, ¶16, 394 Wis. 2d 161, 949 N.W.2d 623, and we interpret statutes using the well-established methodology articulated in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. When reviewing statutory language, we "ascertain and apply the plain meaning of the statutes as adopted by the legislature." *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is

---

[10] The Town argues in its Response brief that US Cellular's declaratory judgment action fails at the outset based on its assertion that US Cellular failed to comply with WIS. STAT. § 893.80(1d), the notice of claim statute. The circuit court summarily rejected this argument, explaining that "[t]he statute and the ordinance clearly set up the available avenues of recourse for a party aggrieved by this political subdivision … and actually, declaratory judgment would be available." The Town does not address the circuit court's specific basis for rejecting its notice-of-claim defense. Instead, it argues that even if US Cellular could demonstrate the Town had actual notice of its claim, it was prejudiced because it was forced into "costly litigation" instead of having an opportunity to negotiate a resolution. As the party asserting that the circuit court erred, the Town carried the burden of demonstrating that the circuit court's decision summarily rejecting its notice-of-claim defense was erroneous. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. The Town failed to meet that burden. It does not present any argument as to why the circuit court's specific grounds for denying its notice-of-claim defense were in error. Further, we are not convinced that the Town, which knew it had missed the statutory ninety-day deadline, could have engaged in negotiations with US Cellular regarding the CUP *after* the Town missed the deadline given the statutory language explicitly stating that after the deadline, the CUP is deemed approved. The Record also demonstrates that based on the attorneys' email exchanges, the Town had actual notice of US Cellular's intent to file suit. Therefore, we decline to address this issue further. *See State v. Gracia*, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 (explaining that we do not have to address underdeveloped arguments).

given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶22 A statute is unambiguous if the interpretative process set forth above "'yields a plain, clear statutory meaning[.]'" *Id.*, ¶46 (citation omitted). If a statute "is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47. "[D]isagreement about the statutory meaning" "is not enough" to render a statute ambiguous. *Id.* Rather, "the test for ambiguity examines the" statutory language "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory … language *reasonably* gives rise to different meanings." *Id.* (quoted source; omission in original).

## A. Interpreting the text of WIS. STAT. § 66.0404

¶23 The text of WIS. STAT. § 66.0404(2)(d), which sets forth certain actions a political subdivision must take in addressing an application submitted under the mobile tower siting law, is straightforward and, frankly, unremarkable.

It begins by setting forth a ninety-day deadline[11] for actions a political subdivision such as the Town "shall" complete to avoid the *consequence* of the applicant being allowed to "consider the application approved"—in other words, being deemed approved by operation of law. *See **id**.* Specifically, after a political subdivision confirms an application is complete, *see* § 66.0404(2)(c), the political subdivision must:

1. Review the application to determine whether it complies with all applicable aspects of the political subdivision's building code and, subject to the limitations in this section, zoning ordinances.

2. Make a final decision whether to approve or disapprove the application.

3. Notify the applicant, in writing, of its final decision.

4. If the decision is to disapprove the application, include with the written notification substantial evidence which supports the decision.

Section 66.0404(2)(d)1-4. The statute also provides that if the political subdivision does not complete each of the four enumerated actions before that ninety-day deadline, "the applicant may consider the application approved" unless the applicant and political subdivision agree, in writing, to extend the deadline. Section 66.0404(2)(d).

¶24 Simply put, there is nothing overtly complicated or confusing about this language—it explains in four simple steps that a political subdivision must review the application, make a decision, notify the applicant of the decision *in*

---

[11] WISCONSIN STAT. § 66.0404(2)(d) allows parties to agree to extend the ninety-day deadline; however, it is undisputed that US Cellular declined to agree to such an extension here despite the Town's request that it do so.

*writing*, and identify the substantial evidence relied upon if the application is disapproved.[12]   Despite the seeming clarity of this statutory language, in order to resolve the issue currently before us, we must determine what constitutes a "notif[ication to] the applicant, in writing" as well as what qualifies as "substantial evidence which supports the decision."  *See id*.  We must also determine whether a political subdivision is required to actually comply with the enumerated actions or whether substantial compliance will suffice, which is at the core of the current dispute.

¶25   We begin with the requirement that a political subdivision must "[n]otify" "the applicant[.]"   WIS. STAT. § 66.0404(2)(d)3.   "Notify" is not statutorily defined; however, it is commonly understood to mean "to give formal notice to" or "to give notice of[.]"  *See Notify*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/notify (last visited Jan. 16, 2025); *see also Notify*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE,   https://ahdictionary.com/word/search.html?q=notify   (last visited Jan. 16, 2025) ("To give notice to; inform").   Each of these definitions suggests that the party undertaking to "notify" someone or something engages in an affirmative action, and based on § 66.0404(2)(d)3, that action must be directed toward "the applicant"—in other words, the person who or entity that filed the application at issue.   It therefore follows that the requirement that a political subdivision must "notify" "the applicant" can mean only one thing:  The political subdivision must actively and formally inform the applicant of something.

---

[12] The parties do not dispute that the Town complied with the first two requirements within ninety days of US Cellular's application having been deemed complete.  *See* WIS. STAT. § 66.0404(2)(d).   Accordingly, this opinion primarily focuses only on the meaning of § 66.0404(2)(d)3 and (d)4.

¶26 As for specifically *what* the political subdivision must formally inform the applicant of, the text of the statute is similarly straightforward. The political subdivision must formally inform the applicant of its "final decision" regarding the application. *See* WIS. STAT. § 66.0404(2)(d)3. The statute also plainly sets forth *how* the political subdivision is to do this. Section 66.0404(2)(d)3 provides the political subdivision must do so "in writing[.]" *See id.* A notification by any other means—verbally at a meeting or during a phone call or other type of conversation—will not satisfy the plain meaning of the statute.

¶27 WISCONSIN STAT. § 66.0404(2)(d)4 also tells the political subdivision that "the written notification" must "include" specific information— "substantial evidence which supports the decision"—if it disapproves the application. *See id.* "Include" is readily understood to mean something "contain[ed] between or within[.]" *See Include*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/include (last visited Jan. 16, 2025) (second definition). Thus, when a political subdivision's final decision is to "disapprove the application," it must "include"—in other words make *part of* the written notification—the substantial evidence relied upon. *See* § 66.0404(2)(d)4.

¶28 Finally, WIS. STAT. § 66.0404(2)(d) informs a political subdivision that it must complete these actions within a specific timeframe—ninety days after deeming an application complete. Failure to do so, the statute explains, results in the applicant being authorized to "consider [its] application approved[.]" *Id.* Reading these statutory provisions together, § 66.0404(2)(d) clearly and unambiguously requires that within ninety days of deeming an application complete, a political subdivision must review the application, make a final

decision regarding approval, and formally inform the applicant of the decision in writing, which, if the application is denied, must also include the identification of the specific information relied upon in disapproving the application.

¶29 Having identified the clear steps a political subdivision must take to comply with WIS. STAT. § 66.0404(2)(d), we must next determine whether § 66.0404(2)(d) requires actual compliance or whether, instead, substantial compliance will satisfy the statutory commands.

*B. Substantial Compliance*

¶30 Whether a statute allows for substantial compliance is a question of statutory interpretation we review de novo. *Pritchard v. Mead*, 155 Wis. 2d 431, 437, 455 N.W.2d 263 (Ct. App. 1990). We first look to the text of the statute to determine whether substantial compliance will be satisfactory. The text of WIS. STAT. § 66.0404(2)(d) tells us three things.

¶31 First, WIS. STAT. § 66.0404(2)(d) does *not* contain an express statement allowing for substantial compliance as other statutes do. For example, WIS. STAT. § 66.1333(11)(c) explicitly states that "[t]he provisions of this subsection shall be construed liberally to effectuate its purposes and *substantial compliance* is adequate." *Id.* (emphasis added); *see also* WIS. STAT. § 111.07(12) ("A *substantial compliance* with the procedure of this subchapter shall be sufficient[.]" (emphasis added)). The legislature did not include the substantial compliance option in this statute. Instead, it chose language specifically signaling the need for actual compliance.

¶32 Second, WIS. STAT. § 66.0404(2)(d) uses the word "shall" in identifying the specific actions a political subdivision must take to ensure it has a

say in whether to approve or disapprove an application, solidifying our conclusion that substantial compliance is insufficient. When interpreting statutes, we will generally "presume that the word 'shall' is mandatory"—in other words, that the enumerated action is *required*. *See* **Heritage Farms, Inc. v. Markel Ins. Co.**, 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465; *see also* **State v. Brott**, 2023 WI App 45, ¶19, 409 Wis. 2d 96, 996 N.W.2d 78, *review denied* 2024 WI 12, 6 N.W.3d 875; **Village of Elm Grove v. Brefka**, 2013 WI 54, ¶¶25-26, 348 Wis. 2d 282, 832 N.W.2d 121 ("The inclusion of a penalty for noncompliance suggests that the term 'shall' is mandatory.").

¶33    Mandatory language is a factor signaling the statute requires actual rather than substantial compliance. *See* **Midwest Mut. Ins. Co. v. Nicolazzi**, 138 Wis. 2d 192, 198, 405 N.W.2d 732 (Ct. App. 1987) ("'If the provision is essential it is mandatory. A departure from it is fatal to any proceeding to execute the statute or to obtain the benefit of it.'" (citation omitted)). Here, WIS. STAT. § 66.0404(2)(d) instructs that "[w]ithin 90 days of its receipt of a complete application, a political subdivision *shall* complete all of the following *or the applicant may consider the application approved*[.]" *Id.* (emphases added). The "shall" in this statute identifies mandatory actions. The legislature's use of the word "shall" in conjunction with a penalty—rescinding the political subdivision's right to disapprove an application, which we address next—signals that actual compliance is required.

¶34    Third, the legislature included a penalty in the text of WIS. STAT. § 66.0404(2)(d), which means the statute requires actual compliance. *See* **Pritchard**, 155 Wis. 2d at 439. "[W]here a legislative provision is accompanied by a penalty for failure to observe it, the provision is held to be mandatory and substantial compliance will not suffice." *Id.* Section 66.0404(2)(d) provides that

"a political subdivision *shall*" complete four enumerated actions to avoid the consequence of an applicant being allowed to "consider [its] application approved[.]" (Emphasis added.) This consequence is tantamount to a penalty in that failure to comply with those actions negates the political subdivision's authority to deny an application.

¶35 In addition, when interpreting whether a statute may be satisfied through substantial compliance, we keep in mind that "the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State v. Williams*, 2014 WI 64, ¶20, 355 Wis. 2d 581, 852 N.W.2d 467 (quoted source omitted). The readily discernable purpose of WIS. STAT. § 66.0404(2)(d) is to ensure that applicants for a CUP related to mobile tower siting receive a specific type of notice (one that is written) within a specified timeframe (ninety days after the application is complete) and that it contains the substantial evidence the political subdivision relied on to disapprove the application. The central objective of the statute discernable from the text itself is that with mobile tower siting applications, the legislature determined that if a political subdivision fails to comply with the statutory requisites before the ninety-day deadline passes, the applicant "may consider the application approved."

¶36 Affording political subdivisions the option to substantially comply with the statute's terms would thwart the purpose of WIS. STAT. § 66.0404(2)(d)—for applicants to receive a timely written notice containing the substantial evidence and reasoning for the political subdivision's rejection of the application. This allows a disapproved applicant to determine whether the political subdivision's reason complied with the law rather than having to piece together the political subdivision's reason from the potentially numerous oral statements made by

various individuals during a meeting. It also facilitates timely and competent judicial review by providing a single, clear, written explanation as to the reason for disapproving the application. Without actual compliance, an applicant is left guessing whether the political subdivision's actions "substantially complied," and judicial review then becomes difficult. In the absence of an adequate written notification, a court cannot review a political subdivision's rationale, but is instead forced to review the rationale by piecing together all of the individual comments made during a meeting.

¶37 Although we have already confirmed that WIS. STAT. § 66.0404(2)(d) requires actual compliance, we note that the Town errs in relying on cases such as *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶¶48-50, 362 Wis. 2d 290, 865 N.W.2d 162, and *Lamar Central Outdoor, Inc. v. Board of Zoning Appeals*, 2005 WI 117, 284 Wis. 2d 1, 700 N.W.2d 87, in support of its assertion that those cases set forth "well-established rules of local government proceedings involving CUPs" and that substantial compliance with § 66.0404(2)(d) is sufficient because those cases do not "require more" in terms of what is required of a municipality's written decisions. Specifically, the Town asserts that those cases stand for the proposition that a political subdivision is not required to issue a formal written decision regarding CUP applications so long as the political subdivision's decision can be readily gleaned elsewhere. *See Oneida Seven Generations Corp.*, 362 Wis. 2d 290, ¶¶48-50 ("municipal administrative decisions need not be in writing"; "a detailed or explicit explanation of the City's reasoning is not necessary"); *Lamar Cent. Outdoor, Inc.*, 284 Wis. 2d 1, ¶31 ("[A] written decision is not required as long as a board's reasoning is clear from the transcript of its proceedings."). Neither *Oneida Seven Generations Corp.* nor *Lamar Central Outdoor, Inc.*, however, involved a statute such as

§ 66.0404(2)(d), where the statutory text *clearly requires* that the political subdivision provide the applicant with a *written* notification and that the written notification also identifies the substantial evidence relied upon if the political subdivision's decision is to disapprove the application. The cases relied on by the Town are clearly distinguishable and simply do not support the Town's position that substantial compliance with § 66.0404(2)(d) is sufficient.

*C. The Town Did Not Actually Comply with* WIS. STAT. *§ 66.0404(2)(d).*

¶38 Having identified what WIS. STAT. § 66.0404(2)(d) requires of a political subdivision and having determined that the political subdivision must actually comply, we must next determine whether the Town complied with the statute here. Based on our review of the Record, we conclude that it did not.

¶39 It is undisputed that the Town reviewed US Cellular's application and reached a final decision to disapprove the application at the Town Board meeting, thereby satisfying WIS. STAT. § 66.0404(2)(d)1 and 2. However, the Town Board's decision at that meeting was rendered *orally*—not in writing—and as the following discussion explains, at no point on or before the July 19, 2023 deadline did the Town formally notify US Cellular of that decision *in writing*. And, having failed to provide written notification, the Town necessarily failed to identify the substantial evidence it relied upon in voting to deny US Cellular's application. Consequently, the Town did not comply with § 66.0404(2)(d)3 and 4.

¶40 In reaching this conclusion, we reject the Town's apparent argument that posting the approved meeting notes from the *Planning Commission*'s meetings—not the approved meeting notes from the *Town Board*'s later meeting—prior to the July 19th deadline satisfied the written notification requirement. First, simply making the notes from those meetings available to the

public on the Town's website does not constitute a formal written notification *to US Cellular*, and the statute makes clear that it is *the Town* that is required to take action—it is not US Cellular that must undertake action and seek out a written decision. In other words, it is not enough to post meeting notes on a website and simply hope the applicant finds them. Rather, the plain text of the statute required that the Town act to contact US Cellular directly. Second, even if posting meeting notes was somehow sufficient to meet the written notification requirement, the meeting notes posted here were from the Planning Commission's meetings, and the Planning Commission was only responsible for making a *recommendation* to the Town Board—it was not responsible for rendering the final decision. The final decision-making authority rested with the Town Board.

¶41 The Town likewise points to email correspondence between its attorney and US Cellular's attorney on June 8th, June 27th, and July 5th—all prior to the July 19th deadline—as satisfying WIS. STAT. § 66.0404(2)(d) because "the Town Attorney and [US Cellular's] Attorney discuss[ed] the denial and evidence relied upon[.]" We reject the Town's contention.

¶42 First, the Town Board meeting did not occur until June 28th, which was *after* the first two emails the Town points to in support of its position. The suggestion that emails sent *prior to* the meeting at which the Town Board voted on US Cellular's application somehow satisfies WIS. STAT. § 66.0404(2)(d) is nonsensical at best and is borderline frivolous. Second, *US Cellular*'s attorney— not the Town's attorney—sent the July 5th email. An email *from* US Cellular's attorney cannot satisfy the requirement that *the Town* notify US Cellular of *its* final decision in writing. Additionally, in the July 5th email, US Cellular's attorney *requested* "a copy of the Board's written decision and [asked that counsel] advise when the decision is filed with the clerk." This request suggests

that at least as of July 5th, which was still prior to the July 19th deadline, US Cellular had not received any written notification from the Town regarding the Board's final decision, and the Town attorney's follow-up email on July 7th stating that he would "check with the Clerk about the status of the meeting minutes" suggests that the Town indeed had yet to provide US Cellular with any type of written notification. Finally, even if the July 5th email indicated that US Cellular was *aware* of the final decision and the reason for the Town's denial, US Cellular's knowledge does not establish that the Town complied with the statute's written notification requirement.

¶43 Relatedly, we also reject the Town's assertion that US Cellular's attendance at the two Planning Commission meetings and the Town Board meeting satisfied WIS. STAT. § 66.0404(2)(d)'s requirements. Again, § 66.0404(2)(d)3 specifically requires that the Town provide US Cellular with *written* notification of its final decision, not an oral notification at the meeting. Moreover, US Cellular's presence at the Town Board meeting where it heard a number of individuals expressing their own thoughts and reasons before the Town Board's oral vote is very different from the statutory requisite that the Town provide US Cellular with a formal written notification identifying the substantial evidence it relied upon in disapproving the CUP.

¶44 Accepting the Town's position that US Cellular's presence at the three meetings satisfies the notice provision would also require us to rewrite the statute and force us to ignore its express provisions. Construing WIS. STAT. § 66.0404(2)(d) as the Town requests would render the written notice provision meaningless. We are not permitted to rewrite statutes or render an interpretation that fails to give meaning to each word. *See Kalal*, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every

25

word, in order to avoid surplusage."); ***Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.***, 2017 WI 71, ¶15, 376 Wis. 2d 528, 898 N.W.2d 70 (noting that our job is to interpret the statute, not rewrite it).

### D. The text of the statute deems the CUP approved by operation of law.

¶45     Based on the foregoing, we conclude that the Town failed to comply with WIS. STAT. § 66.0404.  Having reached this conclusion, we must next address the Town's assertion that a political subdivision's failure to comply with § 66.0404(2)(d) does not ultimately result in the application being approved by operation of law.  According to the Town, while § 66.0404(2)(d) plainly states that "the applicant may consider [its] application approved" if a political subdivision fails to comply with the ninety-day deadline, the statute, it says, is nevertheless silent as "to whether the approving body has or must approve the application let alone the conditions or terms the approving body may place on such approval" and that "the plain language about what the application may consider – or, stated differently, the applicant's expectations – says nothing about the approving body's position on the matter."  Again, we disagree with the Town's contention.

¶46     WISCONSIN STAT. § 66.0404(2)(d) provides, in no uncertain terms, that US Cellular was entitled to consider its application approved due to the Town's failure to comply with the ninety-day deadline.  This can only mean that US Cellular was therefore entitled to proceed with the activity for which it sought approval in its application.  Construing this language as the Town suggests—that US Cellular could *believe* that its application was approved while somehow still allowing the Town to *not* approve it—would lead to an absurd result wherein US Cellular would be left to wonder if it actually could move forward with its plans or if it was instead required to play "wait and see" as to what step the Town

may or may not take next after the Town itself failed to comply with the statute. We do not construe statutes in a manner that leads to "absurd or unreasonable results." *See Kalal*, 271 Wis. 2d 633, ¶46.

¶47 Accordingly, because the Town did not satisfy the requirement that it notify US Cellular of its decision *in writing* by the July 19, 2023 deadline, US Cellular was entitled to "consider [its] application approved[.]" *See* WIS. STAT. § 66.0404(2)(d). In other words, because the Town failed to satisfy the applicable statutory requirements by the deadline, US Cellular's application was deemed approved by operation of law. The Town's failure to comply with the statute does not mean it gets a do-over. The text of the statute is clear—the CUP is deemed approved.

¶48 In reaching this conclusion, we do not, contrary to the Town's claim, violate the separation of powers principle. The interpretation of laws and the application of facts to those laws are core responsibilities of the judicial branch, and interpreting the law and applying that law to the facts presented is precisely what we have done here. *See, e.g.*, *Operton v. LIRC*, 2017 WI 46, ¶73, 375 Wis. 2d 1, 894 N.W.2d 426 (R. Grassl Bradley, J., concurring) ("the court's duty to say what the law is" is a "core judicial function"); *see also Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶37, 376 Wis. 2d 147, 897 N.W.2d 384 (the judicial branch declares what the law is; "the Wisconsin Constitution entrusts the judiciary with the duty of interpreting and applying laws").

¶49 The Town may not like the consequence the legislature chose for a political subdivision's failure to comply with the dictates of WIS. STAT. § 66.0404(2)(d), but it is our job to apply the plain meaning of the statute, not override the legislature's enacted laws. We also reject the Town's claim that

27

applying the plain meaning of the statute somehow interferes with the Town's control over the CUP process. While approval of US Cellular's application by operation of law may be contrary to the Town's oral vote at the Town Board meeting, the Town's failure to satisfy each of the four actions set forth in § 66.0404(2)(d)1-4 was itself a decision the Town chose to make. The Town's inaction, in effect, changed its decision from disapproval to approval. The Record makes clear that the Town Board knew the consequences for failing to meet the ninety-day deadline, and yet it still failed to act. The fact that it no longer controls the CUP decision is a direct result of the Town's failure to comply with the plain text of the statute.

## IV. CONCLUSION

¶50    WISCONSIN STAT. § 66.0404(2)(d) sets forth certain actions a political subdivision must complete if it wishes to retain the ability to deny an application for a CUP under the state's mobile tower siting law, and actual compliance with those actions is required. Here, the Town clearly failed to comply with those requirements, and the circuit court erred as a matter of law in concluding otherwise. Accordingly, US Cellular is entitled to approval of its CUP application by operation of law based on § 66.0404(2)(d)'s plain language. We reverse and remand to the circuit court with directions to enter an order granting US Cellular's declaratory judgment.

*By the Court.*—Order reversed and cause remanded with directions.

Recommended for publication in the official reports.